# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. CR410-087 |
| ) | |
| TODDERICK KYLE STEVENSON ) | |

## REPORT AND RECOMMENDATION

Defendant Todderick Kyle Stevenson moves to suppress all evidence seized following a traffic stop of his vehicle, including the derivative evidence seized during a later search of his home. (Doc. 16.) After considering the conflicting testimony at the suppression hearing, the Court concludes that Stevenson's motion should be **DENIED**.

Officer Mykhel Fincher of the Hinesville Police Department testified that he stopped Stevenson's SUV on October 23, 2009 after observing that the vehicle had a nonfunctioning tag light. When Fincher approached the vehicle to speak with the driver, he encountered the strong odor of marijuana and saw a pistol sitting in plain view in the passenger seat.

After removing Stevenson from the vehicle, Fincher called a canine unit to the scene, but before the unit arrived, Stevenson commented that the officer did not need to call for a dog and admitted that "it's in the backpack." Upon receiving consent to search the SUV, Officer Fincher discovered a backpack containing marijuana, a digital scale, and a Scotchguard container. Stevenson was arrested on a marijuana charge and later released on bond.[1]

About a week later, Agent Grogan and another agent were inspecting the evidence seized during the traffic stop when they discovered that the Scotchguard container had a false bottom and contained a quantity of cocaine and a suspected "cutting" agent. Based upon this discovery, Agent Grogan obtained a warrant for Stevenson's arrest on cocaine charges. Grogan testified that he waited until he spotted Stevenson's vehicle at his residence before executing the arrest warrant. Stevenson delayed several minutes before finally responding to the

---

[1] Officer Fincher issued Stevenson a traffic citation for the defective tag light that evening. Agent Kevin Grogan, a drug task force agent who was called to the scene, took custody of the marijuana and questioned Stevenson briefly after advising him of his *Miranda* rights. While Stevenson does not specifically seek to suppress his incriminating statements to the agent, it is clear that if the initial stop was improper, any statements derived from that illegality would be inadmissible.

agents' knocks at his door. He was then somewhat evasive when asked whether anyone else was inside the home. Stevenson admitted that he had a rifle inside the home and consented to a search of the residence. After an agent found a .22 caliber rifle and a backpack containing marijuana, Stevenson withdrew his consent. The agents promptly ceased their search and obtained a search warrant for his home. During the execution of that warrant, agents located additional drugs, more weapons, and a large quantity of cash.

Defendant Stevenson takes issue with the officers' testimony and raises two arguments. He first contends that the initial stop was made without probable cause. (Doc. 16 at 2.) He testified at the hearing that, contrary to Officer Fincher's assertion, his tag light *was* properly functioning and that Fincher admitted as much, stating that he was looking for a reason to stop Stevenson.[2] He argues that since the initial

---

[2] Stevenson also suggests that he did not knowingly consent to the search of his vehicle. (Doc. 16 at 4.) His consent was not required, however, so long as the initial stop was lawful, since it is "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search [of a vehicle]." *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982); *United States v. Salley*, 341 F. App'x 500 n.2 (11th Cir. 2009) (same). Stevenson does not dispute that the officers could smell the marijuana stored in his car. Hence, the sole issue as to the traffic stop is whether the stop itself was supported by probable cause.

3

stop and search of his vehicle was unconstitutional, the fruit of that illegality, stretching through the search of his home, must be suppressed. (*Id.* at 7-8.) Stevenson further testified that while he at first consented to the search of his home, the arresting officers continued to rummage about his home for several minutes after he explicitly withdrew his consent.

Stevenson's mendacious demeanor at the hearing weighs heavily against him. He was evasive, often refusing to answer straightforward questions, and he minced words when he did answer. For instance, when asked about the marijuana located in a utility room in his garage (next to the rifle that he told the officers was stored there), he initially insisted that he had no knowledge of the marijuana, and yet he never disputed that officers found a significant quantity of various illicit drugs throughout his home during the later warrant-based search, and he ultimately admitted that he knew what was in his house. When asked whether he was nervous about being followed by a police cruiser while carting around marijuana and a firearm, he insisted that he was not. Moreover, he has a track record of telling half truths. When the officers arrived to arrest him at his residence, they asked whether there was

anything in the house they should be concerned with. He told them about the rifle located in the utility room but neglected to disclose that he had a .50 caliber Desert Eagle pistol inside his home.

In contrast to Stevenson's vacillations, the officers' testimony was consistent and clear. Officer Fincher never wavered from his testimony that the SUV's tag light was nonfunctional. That testimony was supported by Agent Grogan, who testified that at the behest of the prosecutor he re-checked the impounded vehicle and confirmed that the light was not operational. The Court credits Fincher and Grogan's testimony and discounts Stevenson's contrary assertion. "Under Georgia law, a tag must be illuminated with a white light so that it is legible from fifty feet to the rear", and if a tag light is nonfunctional, an officer has probable cause to stop the vehicle. *Draper v. Reynolds*, 369 F.3d 1270, 1275-76 (11th Cir. 2004); O.C.G.A. § 40-8-23(d) (requiring every motor vehicle traveling on Georgia roads to have a functioning light that illuminates the vehicle's license plate, rendering the plate clearly legible from a distance of 50 feet to the rear). Hence, the Court finds that the initial stop was supported by probable cause. *See United States v.*

*Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003) (a traffic stop is constitutionally reasonable if it is based upon probable cause or reasonable suspicion to believe that a traffic violation has occurred).

Additionally, the Court credits the officers' testimony that they obtained Stevenson's consent to search his residence. Indeed, Stevenson admitted that he was "OK" with the initial entry.[3] *See United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (a search is constitutional, hence any evidence uncovered during the search is admissible, when the defendant voluntarily consents to the government's intrusion into his home). Located next to the rifle that Stevenson had mentioned, the officers discovered an open backpack containing marijuana. Only then did Stevenson revoke his consent to search. But that revocation did not prevent the officers from securing the incriminating evidence they had already found inside the residence. Hence, his allegation that they were

---

[3] Although his testimony was unclear, at one point, Stevenson seemed to suggest that he permitted the officers to enter his residence only for the purpose of retrieving the rifle. Even if that was the case, as the backpack containing the marijuana was open and its contents were in plain view, its seizure was appropriate. *United States v. Smith*, 459 F.3d 1276, 1290-91 (11th Cir. 2006) (the "plain view" doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and has a lawful right of access to the object itself, and (2) the incriminating character of the item is immediately apparent).

"rummaging about" for a moment after he withdrew his consent raises no constitutional concerns, as the officers immediately ceased their search and simply secured the contraband that they had discovered prior to Stevenson's withdrawal of his consent.

For all of the reasons explained above, defendant's motion to suppress (doc. 16) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this __4th__ day of June, 2010.

<span style="text-align:right">/s/ signature<br>
UNITED STATES MAGISTRATE JUDGE<br>
SOUTHERN DISTRICT of GEORGIA</span>